UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Vitakraft Sun Seed Company, Inc.,            Case No. 3: 14 cv 1741

       Plaintiff

    v.                                     MEMORANDUM OPINION

UFCW Local 75,

       Defendant

### I. BRIEF BACKGROUND

In June 2013, Vitakraft Sun Seed, Inc. and the United Food and Commercial Workers Union, Local 75 entered into their first collective bargaining agreement. The CBA effective dates were June 1, 2013 through May 31, 2015. After ratification of the CBA, the Union filed three grievances which the parties were unable to resolve on their own. The grievances submitted to arbitration involved disputes over holiday pay, vacation requests, and bathroom breaks. Following selection of an arbitrator and a hearing on the issues, the arbitrator rendered an opinion and award favoring the Union.

This matter is now before me on Plaintiff's motion to vacate the May 19, 2014 Arbitration Award (Doc. No. 12), Defendant's motion for summary judgment and response to the motion to vacate (Doc. No. 15), Plaintiff's opposition to summary judgment and response to the motion to vacate (Doc. No. 18), and Defendant's reply in support and response to the summary judgment motion.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, Defendant's motion is granted and the Plaintiff's motion is denied.

## II. STANDARDS OF REVIEW

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

Review of an arbitration award is limited and "[a] court's review of an arbitration award 'is one of the narrowest standards of judicial review in all of American jurisprudence.'" *Totes Isotoner Corp. v. International Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411 (6th Cir. 2008), citing *Way Bakery v. Truck Drivers, Local No. 164*, 363 F.3d 590, 592 (6th Cir. 2004). In assessing whether a "procedural aberration" has occurred sufficient to vacate an arbitration award, the district court considers the following:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"?

*Michigan Family Resources, Inc. v. Service Employees International Union Local 517M*, 475 F.3d 746, 753 (6th Cir.), *cert. denied*, 551 U.S. 1132 (2007). The temptation for judicial intervention "should be resisted even though the arbitrator made 'serious,' 'improvident' or 'silly' errors in resolving the merits of the dispute." *Totes*, 532 F.3d at 412, citing *Michigan Family Resources*, 532 F.3d at 756. The Circuit noted that intervention is the exception as "in most cases, it will suffice to enforce the award that the

arbitrator appeared to be engaged in interpretation, and if there is doubt, we will presume that the arbitrator was doing just that." *Id.*

### III. DISCUSSION

A. Positions of the Parties

Plaintiff argues the award must be vacated as it fails to "draw its essence" from the CBA. This is because the Union essentially requested a declaratory judgment and did not seek an interpretation but a modification of the CBA. Second, Plaintiff contends that parole evidence was improperly admitted and considered by the arbitrator. Next, the Plaintiff argues the award deleted or ignored a CBA provision which made the award unenforceable, thus making the award incapable of "drawing its essence" from the CBA. Fourth, the award's wording of "all" to mean "some" by the arbitrator was not an arguable construction of the CBA. Finally, the finding on the bathroom break provision, which was granted in part, lacked clarity or finality as it ordered the employer to do exactly what it was permitted to do under the CBA.

In opposition, the Union contests the Plaintiff's position on interpretation because it is not the lack of interpretation but the Plaintiff's disagreement with the Arbitrator's interpretation of the CBA. According to Defendant, the award was consistent with the requirements of *Michigan Family Resources*. The Plaintiff's objection to consideration of parole evidence must be dismissed as such evidence can be considered in determining the meaning of the terms. Finally, the Union seeks attorney fees and costs, arguing Plaintiff's institution of this litigation is tantamount to a frivolous action.

B. Relevant Provisions and Grievances

The relevant provisions of the CBA at issue are set forth as follows:

Article 24. Holidays

Section 1. The company agrees to provide six paid holidays as listed below. . . In order to qualify for holiday pay, employees must satisfy all of the following qualifications:

3

>> A. They work on the last work day before and the next work day after the holiday unless their absence has been excused by the Company.
>> B. They work at least one day during the holiday week.
>> C. An employee scheduled to work on a holiday who fails to work will not qualify for holiday pay.

(Doc. No. 12-3 at p. 17).

> Article 23.  Vacation
>
> . . .
>
> Section 5.  All vacations must be approved by Management.  All vacation requests must be made a minimum of fourteen (14) days prior to the vacation. . . .

(*Id.*)

> Article 17.  Work Week Hours and Overtime
>
> Section 3. . . .
>
> The Company shall provide two (2) paid rest periods during a full shift with each rest period being a maximum of twelve (12) minutes in duration. . . . Employees are not permitted to take breaks (go to restroom, go to vending machine, etc.) outside of the scheduled rest periods or lunch period. . . .

(*Id.* at p. 13).

Neither side disputes that after ratification of the CBA, the Union filed the following grievances and proposed remedies:

> 1. The company announced Holiday pay is not being paid to employees that have vacation during a holiday week.  Remedy Sought--Make whole for all losses. (Doc. No. 12-4, p. 1);
>
> 2. Company is not allowing single day vacations as agreed to in bargaining if not requested at least 14 days in advance.  Remedy Sought—Make whole for all loses(sic).  Grant single vacation day for all employees as intent discussed in bargaining. (*Id.*, p. 2); and

4

    3. Employees are not allowed to use bathroom. Remedy Sought—Make whole for all loses(sic). Allow all employees the right of using the bathroom as per the intent of bargaining. (*Id.*, p. 3).

Analysis

  Recognizing the narrow standard of review in a challenge to an arbitration award, I am mindful of the Supreme Court's admonition on the district court's role in such challenges:

> Judicial review of a labor-arbitration decision pursuant to such an agreement is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegation that the decision rests on factual errors or misinterprets the parties' agreement. *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 36, 109 S.Ct. 364, 98 L.Ed.2d 286 (1987). We recently reiterated that if an " 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting *Misco, supra*, at 38, 108 S.Ct. 364). It is only when the arbitrator strays from interpretation and application of the agreement and effectively "dispense [s] his own brand of industrial justice" that his decision may be unenforceable. *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). When an arbitrator resolved disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's "improvidence, even silly, factfinding" does not provide a basis for a reviewing court to refuse to enforce the award." *Misco*, 484 U.S., at 39, 108 S.Ct. 364.

*Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).

  The Plaintiff's first argument centers on the lack of ambiguity of the contract language advocating for strict construction and requiring no interpretation. The Defendant, however, argues it was the meaning in the application of the language upon which there was a difference of opinion and the root of the ambiguity.

  At the outset of the opinion, the arbitrator characterized the Union's position as seeking "an interpretation of the contract language in dispute given the Employer's stated resolution differed from its own." (Doc. No. 12-2 at p. 2). The events leading to the dispute between the parties were described by the Arbitrator as follows:

5

> Following ratification of the Agreement, the Employer held a meeting with employees, purportedly to clear up rumors and confusion regarding the terms of the new contract. [TR. 121]. The position of the Employer was that it would abide by the terms of the Agreement, irrespective of the prior work rules or practices. [TR. 121]. Bargaining unit members who participated in the negotiations took exception to the interpretation of the changes made in Articles 17, 23 and 24 as stated above and the grievances which are the subject of this arbitration were filed.

(Doc. No.12-2 at p. 5).

The arbitrator began her discussion of the issues acknowledging the prohibitions of modifying or altering contract language in the absence of ambiguity or clarity. She also observed, "[a] problem occurs, however, when the parties do not have a meeting of the minds as to the scope and terms of the language used to define the contract parameters, thereby creating ambiguity in otherwise concrete provisions." (*Id.* at p. 5). The arbitrator then referenced the resource, <u>How Arbitration Works</u> by Elkouri & Elkouri, in discussing examining "what the language in dispute meant to the parties at the time it was negotiated." (*Id.* at p. 6).

Here, the ambiguity, discussed at length by the Plaintiff, is patent ambiguity which is defined as "an ambiguity that clearly appears on the face of a document, arising from the language itself." BLACK'S LAW DICTIONARY 93 (9th ed. 2009). The Defendant's position is more akin to the ambiguity contained within the definition of latent ambiguity, which is defined as "[a]n ambiguity that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." *Id.* Indeed, the Sixth Circuit has recognized that ambiguities to a contract may be either patent or latent. *See GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999).

One of the leading treatises on arbitration also addresses the causes of ambiguity and misunderstandings in the following manner:

> The language of mathematics is precise. The English language is not. Even when the greatest care is employed, ambiguity of meaning can result. Moreover, the parties or their representatives may not be skilled in draftsmanship and may employ terms in their contract that are inherently vague. For example, the contract may provide that one or both parties must act on a certain matter "with reasonable promptness." Even more common is what has been called, the "ambiguity of

6

>syntax" error involving misplaced modifiers, inadequate punctuation, or the use of shorthand expressions.
>Another source of ambiguity arises from the inclusion of inconsistent provisions in a contract or conflicting language within a particular term. Still another kind of common ambiguity arises from the failure to foresee the problem that arises from the application of a term to an unexpected situation.
>Most persons experienced in collective bargaining recognize the collective bargaining agreement as a comprehensive, but necessarily flexible, instrument that governs the relations between the parties. The very fact that almost all such agreements provide for the arbitration of grievances concerning agreement interpretation suggests that the parties recognize the impossibility of foreseeing and providing for every question that may arise during the life of the agreement.

ELKOURI & ELKOURI, HOW ARBITRATION WORKS Ch. 9.2.C (7th ed. 2012). (Footnotes omitted).

In this case, the grievance procedure under Article 8, Section 1 of the CBA states: "Should differences arises between the Company and the Union or employees as to the meaning or *application* of the provisions of this Agreement, the Company and employees agree to make efforts to resolve such differences through the following procedure[s]. . . ." (Doc. No. 12-3 at p. 7). (Emphasis added). The Grievance Procedure also states that "[t]he power of the arbitrator shall be limited to the written contract, and he/she shall have no power to modify, change, add to or subtract from the terms of this Agreement." As the Arbitrator addressed the meaning and application of the CBA provisions, she was operating within the confines of the grievance procedure and not changing the terms of the agreement.

The Plaintiff's second argument challenges the arbitrator's consideration of parole evidence. The consideration of extrinsic evidence is appropriate where the contract is ambiguous. *Id. See also*, *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014) ("Courts may examine extrinsic evidence to ascertain the parties' intent only if the contract is unambiguous."); *In re TLB Equipment, LLC*, 479 B.R. 464, 481 (Bankr. S.D. Ohio 2012) (describing methods of contract interpretations under federal common law and Ohio law addressing the consideration of extrinsic evidence in the face of ambiguity).

7

In addressing the holiday pay dispute, the arbitrator considered the testimony of both sides to the negotiation and appeared to give more credibility to the testimony of the Union representatives. That testimony indicated the Union understood the employer's established practice of allowing vacations and paying holiday pay would continue in light of the proposed language. The arbitrator stated:

> "The Arbitrator is mindful that the language ultimately adopted by the parties was proposed by the Labor Organization. However, negotiations cannot be conducted via ambush. If the Labor Organization proposed language which it believed was consistent with the established employment practices and the Employer knew that it intended to modify that practice, its intention should have been made clear during the bargaining process. No assertion was made that the Employer informed the Labor Organization that the existing practice was unacceptable and/or would be discontinued."

(*Id.* at p. 7).

Turning to the vacation leave issue, the Arbitrator identified the issue as "whether employees are required to submit **all** vacation requests at least 14 days in advance, thereby eliminating the practice of allowing employees to take vacation leave one day at a time on short notice." (*Id.* at p. 8) (emphasis in original). The Arbitrator then discussed the testimony of witnesses by both sides on the issue of vacation leave. The Union had a specific recollection and understanding that the employer always had discretion to deny short leaves for the sake of operational needs but that this provision applied to vacation requests of a week or more. The Arbitrator also noted the company's witness had no recollection as to discussion of these issues and "only a vague assertion that he 'didn't recall that it didn't.'" (*Id.* at p. 8).

The opinion next discussed work week hours and overtime characterizing the issue as "not the meaning of the language but rather its application." (*Id.* at p. 9). The Arbitrator presented each side's view on the issue of employee breaks outside of the regularly scheduled breaks.

8

In the face of ambiguity identified by the Arbitrator, the consideration of parole evidence was appropriate. Therefore, the Plaintiff's first two arguments in support of their motion are not well taken.

The Plaintiff's third and fourth arguments challenge the findings of the Arbitrator because the findings fail to draw their essence from the CBA and do not constitute an arguable construction of the CBA. I disagree.

The Arbitrator's analysis, contained in the section entitled, "Resolving Ambiguities and Misunderstandings in Contract Terms," states in its entirety:

> The Employer is certainly free to revise or modify its employment practices and the optimal time to do so is during collective bargaining. However, when an employer intends to apply a condition or an interpretation contrary to the existing and well established employment practice, it is incumbent upon its bargaining representatives to express its intent and provide clarity during the bargaining process.
>
> Where the parties have attached different meanings to an agreement or a term. . . it is interpreted in accordance with the meaning attached by one of them, **if at the time the agreement was made**, that party did not know, or had no reason to know, of any different meaning attached by the other [party]. [emphasis added]; Fors Farms, 112 LA 33 (Cavanaugh, 1999); Farnsworth, Contracts § 7.9 at 462.
>
> While no party can obtain in arbitration what it could not achieve in bargaining, the intent manifested by the parties during negotiations must be clear and distinct, evidenced by their communications. Undisclosed understandings and impressions cannot be imposed when the intent of the terms in question have not been expressly conveyed. This Arbitrator does not imply or believe that either party acted in bad faith or with malice. However experience dictates that when an initial contract between a newly organized unit and an employer with established business practices is completed within less than ten bargaining sessions, it is conceivable that the parties were not of the same mindset when terms and conditions were presented. Further evidence of the genuine misunderstanding in terms lies in the fact that the Labor Organization raised its concerns *immediately* upon being informed of the Employer's contract interpretation one day after ratification of the Agreement.
>
> [An] Arbitrator will declare an agreement to be clear and unambiguous where he is able to determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of the language, in general, its meaning depends. Where, however, the simple facts allow both sides to advance plausible contentions for conflicting interpretations, the Arbitrator will declare the language to be unenforceable, and will make reference to pre-contract bargaining history, past practice and other applicable rules of

> construction in order to arrive at the true meaning of the disputed provision. [Keego Harbor, Michigan, Police Department, 114 LA 859 (Roumell, Jr. 2000, quoting Inland Empire Paper Co., 88 LA 1096 (Levak, 1987)].
>
> Accordingly, based upon the established practice of the parties, the bargaining history and the failure of the Employer to expressly convey its intent to modify its employment practices with the newly formed bargaining unit, this Arbitrator finds the disputed terms of Articles 23 and 24 to be unenforceable.

(*Id.* at pp. 10-11).

The Plaintiff's arguments are aimed at the language of the CBA alone. The parties' understanding of the application of the terms and language was, in this instance, central to the Arbitrator's analysis in assessing the meaning and application of the provisions. To that end, the language of the CBA cannot be viewed in isolation. Therefore, I cannot find the limitations advocated by the Plaintiff applicable here as the terms of the CBA clearly designated disputes as to the "meaning or application of the provisions of this Agreement" to the grievance procedure. The Arbitrator considered issues properly designated to her via the grievance procedure. She also considered extrinsic evidence in making her determination along with consideration of the CBA language. As her decision reflects "hallmarks of interpretation" I find the Plaintiff's arguments to be without merit.

The Plaintiff's final argument centers on the Arbitrator's finding that the bathroom break provision lacked clarity or finality, as it was redundant of what was permitted under the CBA.

The Arbitrator granted relief for the grievances addressing holiday pay and vacations. As to the bathroom break provision, the Arbitrator granted the grievance in part as follows:

> As to Article 17, the grievance is **granted in part**. Bargaining unit members shall adhere to the scheduled breaks established by the Employer. However, as stated by the Employer during the hearing, requests for more frequent or unscheduled restroom breaks will be addressed on an as-needed basis, and the Employer retains its commitment to comply with all applicable State and Federal laws.

10

(Doc. No. 12-2, p. 12). (Emphasis in original). Finally, the Arbitrator expressly retained jurisdiction "to clarify the intended implementation of th[e] Award should such assistance be requested by the parties." (*Id.* at p. 12).

The Arbitrator provided clarity to the meaning and application of this provision in accordance with the employer's past practice, specifically that unscheduled breaks would be "addressed on an as-needed basis." The grievance challenged the employer's stance of not allowing the employees to use the bathroom. (Doc. No. 12-4, p. 3). Unlike the other two provisions subject to grievances, the language in Article 17 was not found unenforceable, but instead was clarified. Thus, the Plaintiff's argument on this issue is unpersuasive.

Given the Court's limited review of an arbitration award, I do not find the award is " 'so untethered to' the terms of the agreement . . .that it would cast doubt on whether the arbitrator indeed was engaged in interpretation." *Michigan Family Resources*, 475 F.3d at 753 (internal citations omitted). Accordingly, the arbitration award is confirmed.

Attorney Fees

The Defendant seeks attorney fees and costs because the dispute was brought in bad faith, or for vexatious, wanton, or oppressive reasons. Alternatively, the Defendant argues sanctions may be imposed for objectively unreasonable behavior, such as instigation of litigation.

In the Sixth Circuit, "attorney fees *may* be awarded in cases falling within Section 301 of the Labor Management Relations Act, if a party has acted in bad faith." *Aircraft Braking Systems Corp. v. Local 856, Inter'l Union, United Auto., Aerospace and Agr. Implement Workers, UAW*, 97 F.3d 155, 163 (6ath Cir. 1996), *cert. denied*, 520 U.S. 1142 (1997). (Emphasis added). The Court is vested with discretion to consider this issue and award fees and costs, if appropriate.

Having reviewed the pleadings, including the transcript and arbitration award, I do not find this is a case which rises to the level of bad faith. Clearly there was a difference of opinion on the

11

interpretation and application of this initial CBA. More than a difference of opinion is necessary in this Circuit to allow attorney fees in a dispute over an arbitration award.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion to vacate the arbitration award (Doc. No. 12) is denied. Defendant's motion for summary judgment on its counterclaim (Doc. No. 15) is granted insofar as the arbitration award is confirmed. Defendant's request for attorney fees and costs (Doc. No. 15) is denied.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge